DEV DAS (SBN : 320712)
THE DAS FIRM, APC.
644 S. Figureoa Street
Los Angeles, CA 90017
Telephone : (248) 943-4828
Email : dev@thedasfirm.com

Attorneys for Plaintiffs
OLMO ZUCCA and JACKSON LOMASTRO

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLMO ZUCCA and JACKSON LOMASTRO,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>SAMUEL AWUKU, professionally known as SAMMY SOSO, an individual; TYLA SEETHAL, an individual; SONY MUSIC ENTERTAINMENT, a Delaware general partnership; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **DECLARATORY JUDGMENT**<br><br>2. **ACCOUNTING**<br><br>3. **CONSTRUCTIVE TRUST**<br><br>4. **UNJUST ENRICHMENT / QUASI CONTRACT**<br><br>5. **QUANTUM MERUIT**<br><br>6. **BREACH OF IMPLIED CONTRACT**<br><br>7. **IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>8. **FRAUDULENT CONCEALMENT**<br><br>9. **FRAUDULENT INDUCEMENT TO CONTRACT**<br><br>10. **RESCISSION BASED ON FRAUDULENT INDUCEMENT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs Olmo Zucca and Jackson LoMastro (collectively, "Plaintiffs"), through undersigned counsel, for their Complaint against Defendants Samuel Awuku, p/k/a Sammy Soso, Tyla Seethal, Sony Music Entertainment ("SME"), and Does 1 through 10, inclusive (collectively, "Defendants"), state and allege as follows:

## **INTRODUCTION**

1.      Defendant Tyla Seethal ("Tyla" or "Seethal") is a South African singer who gained international recognition after the release of her 2023 single *Water* (the "Song").

2.      Since its release by Epic Records (an SME label) on July 28, 2023, the Song has won numerous accolades, including the inaugural Grammy Award for Best African Music Performance, Billboard Music Award for Top Afrobeats Song, and MTV Video Music Award for Best Afrobeats Video.

3.      To date, the Song has over ***one billion*** downloads on Spotify and over ***350 million*** views on YouTube (just from the official music video and official audio), and a significant number of remixes of the Song are being made and registered.

4.      Upon information and belief, the Song has generated well over ten million dollars ($10,000,000) in revenue in the approximate 2-year period since its release and, based on industry history, it is more than reasonable to expect the Song to generate upwards of fifty million dollars ($50,000,000) over an extended period of time.

5.      Plaintiffs Olmo Zucca ("Zucca") and Jackson LoMastro ("LoMastro") are two of the co-composers and co-authors of the Composition of the Song.

6.      Plaintiffs Zucca and LoMastro also are two of the top-line producers of the Song, along with Rayan El-Hussein Goufar (p/k/a Rayo) ("Goufar") and Defendant Samuel Awuku, p/k/a Sammy Soso ("Awuku" or "Soso").

7.      This lawsuit arises from Awuku's improper and unlawful efforts to interfere with Plaintiffs' profit expectancy concerning the Song with undue influence, fraud, and other deceptive tactics in an effort to take sole credit for production of the

Song and to deprive Plaintiffs of top-line producer credit and royalties to which they are entitled from the Song which, given its current proceeds, are reasonably forecasted to reach the million dollar threshold.

8. Defendants have acknowledged that Plaintiffs are co-composers and co-authors of the Composition of the Song, but steadfastly refuse to (i) recognize and compensate Plaintiffs as top-line producers of the Song, and (ii) pay Plaintiffs all of the royalties to which Plaintiffs are entitled from the Song. Defendants have failed to produce any piece of enforceable evidence to defeat or otherwise void Plaintiffs' legal right to credit, royalties, and other profits concerning the Song as co-composers and co-authors.

9. Defendants' refusal to credit Plaintiffs as top-line producers of the Song has resulted in harm to Plaintiffs' reputation and careers, and has cost Plaintiffs opportunities that otherwise would have been available to them had they been credited as top-line producers of the Song.

## **PARTIES**

10. Plaintiff Olmo Zucca is a songwriter, composer, producer, and guitarist, and at all times relevant hereto is and was an individual residing in the County of Los Angeles, California.

11. Plaintiff Jackson LoMastro is a songwriter, composer, and producer, and at all times relevant hereto is and was an individual residing in the County of Los Angeles, California.

12. Defendant Samuel Awuku is a record and vocal producer, songwriter, engineer, and DJ. Plaintiffs are informed and believe and based thereon allege that at all times relevant hereto Awuku is and was an individual residing in the United Kingdom.

13. Defendant Tyla Seethal is a singer. Plaintiffs are informed and believe and based thereon allege that at all times relevant hereto Seethal is and was an individual residing in Johannesburg, South Africa.

14.     Plaintiffs are informed and believe and based thereon allege that Defendant Sony Music Entertainment is a Delaware general partnership, the partners of which are citizens of New York and Delaware. Plaintiffs are further informed and believe and based thereon allege that SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York 10010.

15.     The true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true identities of such Doe Defendants when their identities are discovered. Plaintiffs are informed and believe, and thereon allege, that each such fictitiously named Doe Defendant is responsible in some manner for the events alleged in this Complaint and that Plaintiffs' damages as alleged herein were proximately caused by the conduct of such Doe Defendants, and each of them, and that Defendants, in committing the acts and omissions alleged herein, acted as agents and servants of one another, acted within the scope of their authority as agents and servants of each other, and/or approved and ratified the acts and/or omissions of each other.

## **JURISDICTION AND VENUE**

16.     Plaintiffs' first claim for relief arises under the copyright laws of the United States, as amended (17 U.S.C. § 101, *et seq.*). The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338.

17.     This Court has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because they are so closely related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy and derive from a common nucleus of operative facts.

18.     Additionally, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, as Plaintiffs are each a citizen of California, SME is a citizen of New York and Delaware, Awuku and Seethal are each a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19.     Each of the Defendants is subject to personal jurisdiction in California because a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district; Defendants targeted the conduct complained of herein in California; and Defendants have caused injury to Plaintiffs within this judicial district.

20.     Plaintiffs are informed and believe and based thereon allege that each of the Defendants also is subject to personal jurisdiction in California because they regularly transact, do, and solicit business in this judicial district. By way of example only, Awuku was in Los Angeles for the Grammy Awards in early 2024. While in Los Angeles, Awuku attended a nomination celebration party for the Song (to which he failed to invite Plaintiffs and Goufar). Plaintiffs are informed and believe and based thereon allege that, from February 2024 through April 2024, Awuku stayed in an Airbnb in West Hollywood, California, and ran recording sessions there.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district; Defendants have committed acts directed at this judicial district, where both Plaintiffs reside; and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## **ALLEGATIONS COMMON TO ALL CLAIMS**

22.     A March 8-9, 2023, recording session for the Song took place in Santa Monica, California. Four producers were present, including Zucca, LoMastro, Goufar, and Awuku.

23.     During the recording session, Zucca and LoMastro produced numerous audio files that are used in the final master recording of the Song, including piano, Rhodes, bass guitar, electric guitar, sine pad, voice trumpet, and sound-designed vocals. At the completion of the recording session, Zucca and LoMastro transferred the audio files to Awuku's computer.

24.    Because all four producers contributed equally to the production of the Song, each should be receiving full top-line producer credit and an equal percentage of royalties. The recording session was conducted like many of the other numerous recording sessions that Zucca and Lomastro had entered into as producers in the music industry, where they make music for placement to artists, and are afforded standard market terms as a basic commercial expectation. Absent a written agreement stating otherwise, these industry customs and practices would apply, and Plaintiffs reasonably expected that they did apply.

25.    Zucca and LoMastro were not "session musicians," and their contribution to the Song was not done on a work-for-hire basis. Zucca and LoMastro never received or signed any paperwork indicating that they were session musicians for the Song, and they never were paid on a work-for-hire basis for the Song. Rather, Zucca and LoMastro were full producers. Indeed, Goufar has commented publicly that "the song was produced from scratch by me @olmosound @jacklomastro and him [Awuku]. real producers no instrumentalists. everyone was jamming."

26.    Upon information and belief, Awuku has engaged in a pattern of making materially false representations and outright fabrications to Tyla and Sony, among others, concerning Plaintiffs' agreement to be "session musicians" or otherwise contributing solely on a work for hire basis for his own personal gain which have caused extreme prejudice to Plaintiffs.

27.    In violation of Plaintiffs' rights, Awuku has taken sole credit for the entire production of the Song, negotiated and entered into a producer agreement directly with Seethal, failed to tell Plaintiffs (or Goufar) about it, and failed to cut Plaintiffs in on equal terms as is the market expectation in the music industry absent explicit agreement to the contrary. Instead of each producer getting ¼ of 50% (i.e., 12.5%) of the music publishing royalties (which would be customary), Awuku took 15% for himself, allocated 10% to each of Zucca, LoMastro, and Goufar, and gave 5% to Christopher Alan "Tricky" Stewart.

28.     Although Plaintiffs tried for months to resolve the matter with Awuku, Awuku refused to cooperate and, instead, engaged in a pattern of deception designed to conceal his nefarious actions.

29.     Plaintiffs made repeated efforts beginning in early July 2023 – ***before the Song was released*** – to obtain the credit and royalties to which they are entitled. On June 6, 2023, Awuku informed Goufar via text message that Tyla would be releasing a song using music recorded during the March 8-9, 2023, recording session.

30.     On June 15-16, 2023, Awuku asked Goufar via text message for the full names of the producers who participated in the recording session.

31.     On July 2-3, 2023, Goufar informed Zucca and LoMastro via text message that Tyla would be releasing the Song in late July 2023. Goufar asked Zucca and LoMastro to sign a Split Sheet Agreement to address publishing percentage allocation of the Song.

32.     On July 5, 2023, LoMastro asked Goufar via text message, "Are they doing long form agreement as well? since this is just a split sheet." Goufar responded, "I can ask - this one only concerns publishing."

33.     On July 5, 2023, LoMastro also received an Instagram message from Awuku: "Hey bro. Did you get the forms from Rayo to fill out?" LoMastro responded that he would send the form back ASAP, but also asked "will there be a formal agreement for the record?" Mr. Awuku replied, "No just publishing splits bro." Around this time, LoMastro's manager advised him to ask for Tyla's manager's contact information so the parties could come to an agreement on remaining terms instead of negotiating over Instagram messages.

34.     Zucca and LoMastro signed a "Tyla – Water Split Sheet Agreement" on or about July 5, 2023 ("Split Sheet Agreement"). A true and correct copy of the Split Sheet Agreement is attached hereto as **Exhibit 1.**

35.     The Split Sheet Agreement provides in pertinent part that "the copyright in the Composition shall be secured and held in the name of the following writers

1  and publishers with writing/production credits, songwriter and publishing income
2  from the Composition being listed and divided as set forth below."

3      36.    The Split Sheet Agreement is not signed by anyone other than Zucca,
4  LoMastro, and Goufar, is undated, and expressly addresses only "writing/production
5  credits, songwriter and publishing income."

6      37.    Plaintiffs never waived any of their rights to master/record royalties or
7  standard SoundExchange royalties for the Song.

8      38.    Prior to, during, and following the point at which Plaintiff signed the
9  Split Sheet Agreement, Awuku made numerous representations to Plaintiffs that a
10 formal producer agreement, reflecting Plaintiffs' true credit and appropriate
11 master/record royalty arrangement, would be forthcoming. Awuku knowingly used
12 these materially false and malicious statements to induce Plaintiffs to enter into the
13 Split Sheet Agreement and otherwise act in a manner to prejudice Plaintiffs'
14 undeniable rights as co-producers of the Song. This reliance has and continues to
15 cause Plaintiffs significant harm.

16     39.    On July 27, 2023, LoMastro messaged Mr. Awuku via Instagram asking
17 for "Tyla's managers email/phone ## for my MGMT." LoMastro explained that the
18 Song was being released that night and his management "wanted to get the record
19 papered up." Awuku replied, "you just got pub on this there's no paperwork needed
20 agreement wise. Hit up my manager if anything. He's been dealing with it telling me
21 what I need and who needs to sign what etc." Awuku then provided his manager's
22 email address.

23     40.    LoMastro's managers made several attempts to contact Awuku's
24 manager and Epic Records to address the incomplete paperwork. LoMastro's
25 managers received no response from either party.

26     41.    On October 20, 2023, LoMastro received an Instagram message from
27 Awuku, who stated that he "just got a message from the label" and wanted to talk

28

with LoMastro. LoMastro provided Awuku with his manager's contact information and explained that "i don't deal w the business side of things brody."

42.     On November 13, 2023, LoMastro's attorney, Matt Buser, contacted Tyla's attorney, Roger Patton, seeking proportionate participation in the producer terms along with crediting for the Song.

43.     Mr. Buser also exchanged emails with Awuku's counsel from November 13, 2023, through November 21, 2023. Awuku's counsel stopped responding to Mr. Buser on November 21, 2023. LoMastro's managers subsequently made several attempts to contact Awuku's manager and SME to address the incomplete paperwork. They received no response from either party.

44.     Beginning on or about March 29, 2024, Zucca and his managers separately sought producer credit and master points for Zucca, to no avail.

45.     SME originally agreed to give Zucca the compensation he requested, but then said that Zucca had to take it up with Awuku's team because they were in charge of dispensing credits and points.

46.     On May 13, 2024, Zucca and his manager had a meeting with Zeke Lewis, president of Epic Records, to play demos for Tyla and/or other artists. After congratulating Zucca on the Song, Mr. Lewis said that Zucca was not the first person to come to Epic Records looking to fix their credit for the Song. Lewis claimed that Awuku did not inform Epic Records that there were other producers on the Song.

47.     Upon information and belief, Seethal and Awuku ultimately entered into a producer agreement which purported to provide Awuku with top line credit and master/record royalties to Plaintiffs' exclusion.

48.     To date, Plaintiffs still have not been provided with a copy of the producer agreement between Seethal and Awuku to understand the extent of their right to recovery against these parties – to even ascertain the full extent of culpable parties – despite countless requests. In this regard, the full extent of the fraudulent

COMPLAINT

1  scheme perpetuated by Defendants remains unknown. The harm from this
2  concealment continues to the present.

3      49.    In light of Plaintiffs' claims and the conduct of Seethal and Awuku,
4  Defendant SME made the decision to hold up all royalty payments regarding the
5  Song indefinitely such that Plaintiffs have not received just compensation for their
6  work concerning the Song.

7      50.    Plaintiffs are informed and believe and based thereon allege that the
8  copyright for the Composition of the Song identifies Plaintiffs as co-copyright
9  claimants.

10     51.    Plaintiffs are informed and believe and based thereon allege that the
11 copyright for the Composition of the Song also identifies Plaintiffs as co-authors.

## FIRST CAUSE OF ACTION

### (For Declaratory Relief against all Defendants)

14     52.    Plaintiffs repeat, reallege, and incorporate by reference each and every
15 allegation contained in Paragraphs 1 through 51, inclusive, of this Complaint as if
16 fully set forth herein.

17     53.    An actual and present controversy now exists between Plaintiffs and
18 Defendants.

19     54.    Plaintiffs contend that they are co-authors of the Composition of the
20 Song and top-line producers of the Song, which entitles each of Zucca and LoMastro
21 to full top-line producer credit, a 12.5% share of the publishing royalties generated
22 from the exploitation of the Song, a *pro rata* share of the master/record royalties
23 relating to the Song, a *pro rata* share of standard SoundExchange royalties for the
24 Song, and producer fees.

25     55.    Defendants have denied that Plaintiffs are top-line producers of the
26 Song, and have further denied that Zucca and LoMastro are each entitled to full top-
27 line producer credit, a 12.5% share of the publishing royalties generated from the
28 exploitation of the Song, a *pro rata* share of the master/record royalties relating to

the Song, a *pro rata* share of standard SoundExchange royalties for the Song, and producer fees.

56.    Because Defendants have refused to recognize Plaintiffs' status as top-line producers of the Song, and have failed to pay Plaintiffs all of the royalties they are owed from the Song, Plaintiffs have each suffered injury in fact.

57.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration of rights as follows: (a) Plaintiffs are each a top-line producer of the Song; (b) Plaintiffs are each entitled to full top-line producer credit for the Song, including on the copyright to the Composition for the Song; (c) Plaintiffs are each entitled to a prospective and retroactive 12.5% share of the publishing royalties generated from the exploitation of the Song; (d) Plaintiffs are each entitled to prospective and retroactive *pro rata* master/record royalties relating to the Song; (e) Plaintiffs are each entitled to prospective and retroactive *pro rata* standard SoundExchange royalties for the Song; and (f) Plaintiffs are each entitled to producer fees for the Song.

## **SECOND CAUSE OF ACTION**

### **(For Accounting against all Defendants)**

58.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 57, inclusive, of this Complaint as if fully set forth herein.

59.    Plaintiffs, as co-authors of the Composition for the Song and top-line producers of the Song, are each entitled to a 12.5% share of the publishing royalties generated from the exploitation of the Song and a *pro rata* share of the master/record royalties and standard SoundExchange royalties that Defendants have enjoyed from the exploitation of the Song.

60.    By commercially exploiting the Song without accounting to Plaintiffs for all music royalties generated by the Song, Defendants have wrongfully deprived Plaintiffs of their rightful share therefrom.

61.     Defendants are in sole control of the books and records needed to ascertain the amounts due to Plaintiffs pursuant to their special relationship as co-authors of the Composition of the Song and top-line producers of the Song. Plaintiffs have no means by which they can assemble the information necessary to calculate what is owed to them by Defendants.

62.     Plaintiffs are entitled to an order of this Court directing Defendants to render a complete and honest accounting of all music royalties generated by the Song, including, but not limited to, mechanical royalties, performance royalties, synchronization royalties, and print royalties, and all sums due to Plaintiffs, and to pay Plaintiffs the sums shown by such accounting.

## THIRD CAUSE OF ACTION

### (For Constructive Trust against all Defendants)

63.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 62, inclusive, of this Complaint as if fully set forth herein.

64.     By virtue of the foregoing, Plaintiffs are each entitled to a 12.5% share of the publishing royalties generated from the exploitation of the Song and a *pro rata* share of the master/record royalties and standard SoundExchange royalties for the song.

65.     Defendants have wrongfully deprived each Plaintiff of a 12.5% share of the publishing royalties generated from the exploitation of the Song and of a *pro rata* share of the master/record royalties and standard SoundExchange royalties for the song.

66.     By virtue of Defendants' acts, Defendants hold the music royalties derived from the exploitation of the Song as constructive trustees for the benefit of Plaintiffs and Defendants.

67.     Plaintiffs are each entitled to immediate possession of a 12.5% share of the publishing royalties generated from the exploitation of the Song and a *pro rata*

1   share of the master/record royalties and standard SoundExchange royalties for the
2   Song held by Defendants as constructive trustees.

3                              **FOURTH CAUSE OF ACTION**

4            **(For Unjust Enrichment / Quasi Contract against all Defendants)**

5            68.    Plaintiffs repeat, reallege, and incorporate by reference each and every
6   allegation contained in Paragraphs 1 through 67, inclusive, of this Complaint as if
7   fully set forth herein.

8            69.    Defendants have each received and unjustly retained a benefit at
9   Plaintiffs' expense.

10           70.    Awuku has received a benefit in the form of being recognized as the sole
11  top-line producer of the Song when, in fact, Plaintiffs also are top-line producers of
12  the Song.

13           71.    Defendants have each received and unjustly retained royalties from the
14  Song that rightfully belong to Plaintiffs.

15           72.    Defendants knew or should have known that Plaintiffs expected to
16  receive (i) top-line producer credit for the Song, and (ii) all of the royalties to which
17  Plaintiffs are entitled from the Song.

18           73.    It would be inequitable and unjust for Defendants to retain the foregoing
19  benefits. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs
20  have suffered damages in an amount to be proven at trial, but at a minimum $75,000,
21  exclusive of interest and costs.

22                              **FIFTH CAUSE OF ACTION**

23                                  **Quantum Meruit**

24                               **(against all Defendants)**

25           74.    Plaintiffs repeat, reallege, and incorporate by reference each and every
26  allegation contained in Paragraphs 1 through 73, inclusive, of this Complaint as if
27  fully set forth herein.

28

75.     Plaintiffs were integral in the production and recording of the Song. The reasonable value of the above-mentioned services and materials is greater than $75,000, and Defendants had notice of that amount.

76.     Plaintiffs have demanded that Defendants pay the above-mentioned sum but Defendants have willfully refused and continue to refuse to pay Plaintiffs for their work.

## SIXTH CAUSE OF ACTION
### Breach of Implied Contract
### (against all Defendants)

77.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 76, inclusive, of this Complaint as if fully set forth herein.

78.     Plaintiffs have entered into an implied-in-fact contract based on the conduct of the parties, which includes, but is not limited to, the production, release, and collection of payments and revenue from the Song.

79.     Defendants breached duties to provide credits and pay royalties which they knew were owed to Plaintiffs based on this conduct, and Plaintiffs have suffered damages due to Defendants' refusal to pay.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against all Defendants)

80.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 79, inclusive, of this Complaint as if fully set forth herein.

81.     Plaintiffs and Defendants entered into an oral or implied-in-fact contract based on the communications and conduct of the parties.

82.     Plaintiffs did all, or substantially all of the significant things that the contract required them to do including the writing, performance, and co-production

of the Song. All conditions required for Defendants performance had occurred including the release of the Song and Defendants' collection of revenue from the song. Defendants' have since refused to honor their duties under these agreements and have refused to act and negotiate in good faith toward resolving the dispute.

83.    In refusing to pay Plaintiffs their fair share of royalties and credits and refusing to negotiate, and refusing to provide a complete and accurate accounting, Defendants have not acted fairly and in good faith. Plaintiffs have been damaged as a result of Defendants' bad faith conduct.

84.    The actions and omissions of Defendants were willful, malicious and oppressive and designed and intended to cause harm to Plaintiffs and by reason thereof, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount deemed necessary by this court to punish and deter such actions in the future.

## EIGHTH CAUSE OF ACTION

### Fraudulent Concealment

### (Against all Defendants)

85.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 84, inclusive, of this Complaint as if fully set forth herein.

86.    Plaintiffs and Defendants were in a contractual business relationship in which Defendants disclosed some facts but failed disclose other facts, making the disclosure deceptive. Defendants willfully failed to disclose that they had entered into a producer agreement that egregiously misrepresented Plaintiffs' contributions to the Song and that they never had an intention of providing credits or paying royalties to Plaintiffs after they had co-written and co-produced the Song. Defendants knew that Plaintiffs were expecting to receive production credits and royalties on the Song, but Defendants obfuscated their true motives to induce Plaintiffs to provide creative services on the song when they had no intention to compensate them.

87.    The Defendants' fraudulent concealment of these critical facts was a substantial factor in causing their losses.

88.    The actions and omissions of Defendants were willful, malicious and oppressive and designed and intended to cause harm to Plaintiffs and by reason thereof, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount deemed necessary by this court to punish and deter such actions in the future.

## NINTH CAUSE OF ACTION

### Fraudulent Inducement to Contract

### (Against all Defendants)

89.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 88, inclusive, of this Complaint as if fully set forth herein.

90.    Defendant Awuku fraudulently and maliciously induced Plaintiffs to enter the Split Sheet Agreement with a false promise that a producer agreement memorializing Plaintiffs' expected master/record royalty percentage would be forthcoming and that the precise royalty percentages would be agreed upon at a later point in time.

91.    At the time Awuku made this promise to Plaintiffs, he never intended to actually follow through and provide Plaintiffs with an opportunity to sign, review, or otherwise have Plaintiffs' expected interest concerning royalties or credit reflected in the ultimate producer agreement with Defendant Seethal.

92.    In each and every opportunity that Defendant Awuku made representations that Plaintiffs' master/record royalty percentages would be reflected in a forthcoming producer agreement, or otherwise indicated Plaintiffs would receive a master/record royalty payment or top-line producer credit, Awuku knew this to be false, and these representations were made with the intent to defraud and deceive

COMPLAINT

Plaintiffs and with the intent to induce Plaintiffs to rely on Defendants' representations in the manner herein alleged.

93.    Plaintiffs, at the time these representations were made by Defendant Awuku, were ignorant of the falsity of his representations and believed them to be true.

94.    As a proximate results of Defendants' fraud, particularly defendant Awuku, and the facts alleged in this Complaint, Plaintiffs were misled into believing that Defendants would provide Plaintiffs with royalty payments and appropriate and accurate producer credit reflecting their contributions to the Song and as a result Plaintiffs have been damaged in an amount to be established at trial.

95.    Plaintiffs would never have agreed to sign the Split Sheet Agreement and the associated percentages concerning publishing royalties had they known of Defendant Awuku's plot to cut Plaintiffs out of *any* master/record royalties.

96.    In doing the acts alleged herein, Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages in an amount to be established at trial.

## TENTH CAUSE OF ACTION

### Rescission Based on Fraudulent Inducement

### (Against Defendant Awuku)

97.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 96, inclusive, of this Complaint as if fully set forth herein.

98.    Defendant Awuku fraudulently and maliciously induced Plaintiffs to enter the Split Sheet Agreement with a false promise that a producer agreement memorializing Plaintiffs' expected master/record royalty percentage would be forthcoming and that the precise royalty percentages would be agreed upon at a later point in time.

99.   At the time Awuku made this promise to Plaintiffs, he never intended to actually follow through and provide Plaintiffs with an opportunity to sign, review, or otherwise have Plaintiffs' expected interest concerning royalties or credit reflected in the ultimate producer agreement with Defendant Seethal.

100.   In each and every opportunity that Defendant Awuku made representations that Plaintiffs' master/record royalty percentages would be reflected in a forthcoming producer agreement, or otherwise indicated Plaintiffs would receive a master/record royalty payment or top-line producer credit, Awuku knew this to be false, and these representations were made with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to rely on Defendants' representations in the manner herein alleged.

101.   Plaintiffs, at the time these representations were made by Defendant Awuku, were ignorant of the falsity of his representations and believed them to be true.

102.   As a proximate results of Defendants' fraud, particularly defendant Awuku, and the facts alleged in this Complaint, Plaintiffs were misled into believing that Defendants would provide Plaintiffs with royalty payments and appropriate and accurate producer credit reflecting their contributions to the Song and as a result Plaintiffs have been damaged in an amount to be established at trial.

103.   Plaintiffs would never have agreed to sign the Split Sheet Agreement and the associated percentages concerning publishing royalties had they known of Defendant Awuku's plot to cut Plaintiffs out of *any* master/record royalties.

104.   In doing the acts alleged herein, Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages in an amount to be established at trial.

105.   By doing each of the above acts with oppression, fraud and malice, Plaintiffs are additionally entitled to judicial rescission of the Split Sheet Agreement and associated percentages concerning publishing royalties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor and against Defendants as follows:

1.     That the Court declare as follows: (a) Plaintiffs are each a top-line producer of the Song; (b) Plaintiffs are each entitled to full top-line producer credit for the Song, including on the copyright to the Composition for the Song; (c) the Split Sheet Agreement is rescinded such that Plaintiffs are each entitled to a prospective and retroactive 12.5% share of the publishing royalties generated from the exploitation of the Song; (d) Plaintiffs are each entitled to prospective and retroactive *pro rata* master/record royalties relating to the Song; (e) Plaintiffs are each entitled to prospective and retroactive *pro rata* standard SoundExchange royalties for the Song; and (f) Plaintiffs are each entitled to a producer fee for the Song;

2.     That the Court order an accounting of all music royalties derived from the exploitation of the Song by Defendants;

3.     That the Court impose a constructive trust over the music royalties from the exploitation of the Song pending the final disposition of this action;

4.     That the Court award Plaintiffs money representing restitution for benefits unjustly obtained by Defendants;

5.     That the Court award Plaintiffs punitive and exemplary damages in an amount to be determined at trial;

6.     That Plaintiffs be awarded their reasonable attorney's fees and costs pursuant to Section 505 of the U.S. Copyright Act (17 U.S.C. § 505);

7.     That Plaintiffs be awarded pre-judgment and post-judgment interest as permitted by law;

8.    That Plaintiffs be awarded their costs of suit; and

9.    For such other and further relief as the Court deems to be just and proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues in this case so triable.


Dated: July 25, 2025                              THE DAS FIRM, APC


By:_____
       Dev Das

       Attorneys for Plaintiffs
       Olmo Zucca and Jackson LoMastro

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT